Filed 4/28/25  P. v. Gonzalez CA4/2
Opinion following rehearing

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E082536 |
| v. | (Super. Ct. No. FVI015616) |
| RAYMOND GONZALEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Shannon Faherty, Judge.  Reversed and remanded with directions.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, James M. Toohey, and Jon S. Tangonan, Deputy Attorneys General, for Plaintiff and Respondent.

Jason Anderson, District Attorney, and Robert P. Brown, Deputy District Attorney, as Amicus Curiae.

1

## I.

## INTRODUCTION

Defendant and appellant Raymond Gonzalez appeals from an order summarily denying his petition for resentencing under Penal Code section 1172.6.[1]  Defendant argues the trial court erroneously concluded that he failed to establish a prima facie case of resentencing eligibility.  He further argues the record shows that the trial court's ruling was based on a material misunderstanding of the facts stated in the preliminary hearing transcript.  In addition, defendant argues that the trial court erred in engaging in impermissible fact-finding based on the preliminary hearing transcript.

We agree the trial court erred in denying defendant's resentencing petition at the prima facie stage.  We therefore reverse the order and remand the matter to the trial court with directions to issue an order to show cause and hold an evidentiary hearing under section 1172.6, subdivision (d).

---

[1]  Unless otherwise noted, all statutory references are to the Penal Code. Defendant filed his petition for resentencing under former section 1170.95, which the Legislature later renumbered as section 1172.6 without substantive change.  (Stats. 2022, ch. 58, § 10.)  We hereafter cite to section 1172.6 for ease of reference.

## II.

## FACTS[2]

On August 9, 2002, defendant and co-defendants, Bobby Keeth and Carlos Hernandez, assaulted Charles Cosby in his apartment. Hernandez hit Cosby in the head multiple times with a metal pole, which, according to the coroner, caused Cosby's death.

Sheriff's Detective Joe Palomino testified at the preliminary hearing that Keeth admitted during his interview on August 9, 2002, that he wrote threats found on Cosby's apartment door, which complained about "rats" and "snitches," and had Keeth's initials, "BK," with Bobby written underneath the letter B.

After denying any involvement in the homicide and taking a polygraph examination, Keeth said he went to Cosby's apartment with Hernandez and defendant. Keeth saw Cosby lying on his bed and flung a knife at Cosby, which struck Cosby near his buttocks. Hernandez hit Cosby on the head with a pole, and defendant hit Cosby on his back several times with a second pole. Keeth, Hernandez, and defendant then fled. In inconsistent versions of the incident, Keeth stated Hernandez and defendant had finished hitting Cosby when Keeth walked into the bedroom. But in another version, Keeth stated he saw Hernandez hit Cosby twice and defendant strike him once. Keeth repeatedly stated that when the three men walked to Cosby's apartment, he did not know the intention was to kill Cosby.

---

[2] The facts are taken from the reporter's transcript of the preliminary hearing.

3

Palomino testified at defendant's preliminary hearing that, when Palomino interviewed defendant on August 13, 2002, defendant initially stated that he went to Cosby's apartment with only Keeth, but later said he went with Keeth and Hernandez. Defendant thought Cosby was "'a rat.'" Defendant said what happened to rats was: "'[f]—king they get dealt with. They get killed, whatever. They get beat up, whatever.'" Defendant further stated during his interview that defendant said that he, Keeth, and Hernandez went to Cosby's apartment, planning on "taking care of or beating or in his words 'f—cking up' Cosby," because defendant was "upset with Mr. Cosby for blaming [defendant] for a prior burglary that had occurred at his house."

Defendant told Palomino that two metal pipes or poles were used to beat Cosby. Initially, defendant said Keeth and Hernandez beat Cosby with bats, but then later admitted that he used one of the poles to hit Cosby across the back five times while Cosby was sleeping on his bed on his stomach. Defendant said he saw Hernandez hit Cosby five to 10 times in the head area with a pole. Hernandez and defendant hit Cosby at the same time with the poles. Defendant said Keeth "shanked" (stabbed) Cosby. Keeth stabbed him in the buttocks area, and defendant started laughing. After the assault, defendant searched Cosby's pockets and did not find anything. The three men ransacked Cosby's apartment and stole Cosby's property, including radios, cameras, and camcorders.

4

III.

PROCEDURAL BACKGROUND

Defendant, Keeth, and Hernandez were charged in the information with "unlawfully, and with malice aforethought," murdering Cosby (§ 187, subd. (a); count 1); and residential burglary (§ 459; count 2). The information does not specify a theory of murder. The information further alleged as to the murder, the enhancement of personal use of a deadly weapon (§ 12022, subd. (b)(1)), and that the three defendants intentionally killed Cosby because he witnessed a crime and was intentionally killed for the purpose of preventing his testimony in a criminal proceeding (§ 190.2, subd. (a)(10)).

On April 25, 2006, defendant signed a written guilty plea form, stating that he was pleading no contest to "second degree murder" (§ 187, subd. (a)) and admitting the deadly weapon enhancement. During the plea hearing, defendant also pled "no contest" to second degree murder and admitted the deadly weapon enhancement (§ 12022, subd. (b)(1)). The trial court did not elicit specific facts from defendant during the plea or state a theory for the conviction. The parties agreed the preliminary hearing transcript would serve as the factual basis for the no contest plea.

Pursuant to defendant's plea, the trial court sentenced defendant to 15 years to life for second degree murder, and a consecutive sentence of one year for the deadly weapon enhancement.

5

On September 2, 2022, defendant filed a form petition for resentencing under section 1170.95 (now § 1172.6). Defendant alleged he was not the actual killer; did not, with intent to kill aid, abet, or assist the actual killer in committing the murder; and was not a major participant or act with reckless indifference to human life during the course of the crime.

The People filed opposition to the resentencing petition and a request for judicial notice of (1) the information, (2) the transcript of defendant's plea of no contest to second degree murder and the personal use of a deadly weapon enhancement, (3) the plea form, and (4) the preliminary hearing transcript. The People argued that defendant failed to make a prima facie showing he was entitled to sentencing relief, and the record demonstrated that defendant was an actual killer and a major participant who acted with reckless indifference to human life. The People argued there was no prima facie showing because defendant pled no contest to second degree murder, the parties stipulated to the preliminary hearing transcript as the factual basis for defendant's guilty plea, and the preliminary hearing transcript included defendant's admissions establishing his role in the murder.

Defendant filed a reply, arguing that he established a prima facie case that he was eligible for resentencing because he was not the actual killer, and there was a question of fact whether he was a major participant who acted with reckless indifference. Defendant asserted that, because he established prima facie eligibility for resentencing, the trial court should issue an order to show cause.

During the prima facie hearing on defendant's petition for resentencing on September 29, 2023, the trial court stated it reviewed all of the briefs and documents submitted by the parties, and the judicially noticed documents, including the preliminary hearing transcript.  The trial court summarized the transcript as containing evidence that defendant was the only individual with a pole, and the cause of death was massive head trauma caused by Cosby being struck with the pole.  The court acknowledged that defendant testified he hit Cosby in the back, not the head.

Defendant responded that the preliminary hearing testimony included testimony by Keeth, confirming that defendant only struck Cosby in the back, and Hernandez struck Cosby in the head.  Defendant therefore argued the only issue was whether defendant was a major participant in the murder, and there was insufficient evidence of this.  Defendant also argued there was insufficient evidence he was the actual killer and had an intent to kill.

The People argued the evidence was insufficient under *People v. Nguyen* (2020) 53 Cal.App.5th 1154 (*Nguyen*), to establish a prima facie case based on the preliminary hearing transcript.  The trial court responded that it agreed.  The court stated that "it's clear to the Court based on that preliminary hearing transcript that the defendant is not eligible and that he has not made a prima facie showing in this case."  The court therefore denied defendant's petition for resentencing.

Defendant argued *Nguyen* is distinguishable because in the instant case, there was no stipulation the trial court could consider the preliminary hearing transcript when ruling on defendant's resentencing petition. Defendant also argued *Nguyen* did not address whether the trial court may rely on the preliminary hearing transcript when determining whether defendant established a prima facie case. Defendant added that the only question was whether he was a major participant, and under *Edmond v. Florida* (1982) 458 U.S. 782, the evidence did not support such a finding.

The trial court responded that the preliminary hearing transcript showed that defendant was the actual killer and that, if not the actual killer, he was an active participant in the murder. The trial court therefore concluded defendant had not established a prima facie case and denied defendant's resentencing petition.

Defendant filed a timely notice of appeal of the order denying his resentencing petition.

IV.

APPLICABLE LEGAL BACKGROUND

"Senate Bill [No.] 1437 [(2017-2018 Reg. Sess.)] significantly limited the scope of the felony-murder rule to effectuate the Legislature's declared intent 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'" (*People v. Strong* (2022) 13 Cal.5th 698, 707-708 (*Strong*).)

Pursuant to section 1172.6, as amended by Senate Bill No. 775 in 2021, in the context of a guilty plea, "a petitioner convicted of murder is ineligible for resentencing if the record establishes, as a matter of law, that (1) the complaint, information, or indictment did not allow the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine, or another theory of imputed malice; (2) the petitioner was not convicted under such theory; *or* (3) the petitioner could presently be convicted of murder or attempted murder under the law as amended by Senate Bill No. 1437 . . . ." (*People v. Flores* (2022) 76 Cal.App.5th 974, 987.)

"Senate Bill [No.] 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended. [Citations.] Under newly enacted section 1172.6, the process begins with the filing of a petition containing a declaration that all requirements for eligibility are met [citation], including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to . . . [s]ection 188 or 189 made effective January 1, 2019,' the effective date of Senate Bill [No.] 1437 [citation]." (*Strong*, *supra*, 13 Cal.5th at p. 708, fn. omitted.)

If the section 1172.6 petition for resentencing contains all the required information, including a declaration by the petitioner that he or she is eligible for relief based on the requirements of subdivision (a), the court must appoint counsel to represent the petitioner upon his or her request. (§ 1172.6, subd. (b)(3); *People v. Lewis* (2021) 11

9

Cal.5th 952, 970 (*Lewis*).)  The court also must direct the prosecutor to file a response to the petition and permit the petitioner to file a reply within 30 days after the prosecutor's response is filed, and then the court must "hold a hearing to determine whether the petitioner has made a prima facie case for relief."  (§ 1172.6, subd. (c).)

"While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for . . . relief, the prima facie inquiry . . . is limited.  Like the analogous prima facie inquiry in habeas corpus proceedings, '"the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause."'  [Citations.]  '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.'"  (*Lewis*, *supra*, 11 Cal.5th at p. 971.)  "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'"  (*Id*. at p. 972.)  "[T]he 'prima facie bar was intentionally and correctly set very low.'"  (*Ibid*.)  "'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'"  (*Id*. at p. 971.)

10

In cases where the conviction resulted from a guilty plea rather than a trial, the record of conviction may include the transcript of the defendant's preliminary hearing testimony when the transcript "reliably reflect[s] the facts of the offense for which the defendant was convicted." (*People v. Reed* (1996) 13 Cal.4th 217, 223; see *People v. Patton* (2025) 17 Cal.5th 549, 567 (*Patton*).) "The record of conviction," our Supreme Court has explained, "will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless. This is consistent with the statute's overall purpose: to ensure that murder culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process." (*Lewis*, *supra*, 11 Cal.5th at p. 971; see also *Patton*, *supra*, 17 Cal.5th at p. 562.)

The court's "prima facie inquiry . . . is limited. . . . '"[T]he court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause."' [Citation.]" (*Lewis*, *supra*, 11 Cal.5th at p. 971; accord, *Patton*, *supra*, 17 Cal.5th at p. 563; *Strong*, *supra*, 13 Cal.5th at p. 708 [If a petitioner has made a prima facie showing of entitlement to relief, "'the court shall issue an order to show cause.'"].)

11

Once the court determines that a defendant has made a prima facie showing, it "must [then] hold an evidentiary hearing at which the prosecution bears the burden of proving, 'beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder' under state law as amended by Senate Bill [No.] 1437. [Citation.] 'A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' [Citation.] 'If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges.'" (*Strong*, *supra*, 13 Cal.5th at p. 709; accord, *Patton*, *supra*, 17 Cal.5th at p. 559; *Lewis*, *supra*, 11 Cal.5th at p. 960.)

Effective January 1, 2022, Senate Bill No. 775 (2021-2022 Reg. Sess.) "'[c]larifie[d] that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural [and] probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories.'" (*People v. Birdsall* (2022) 77 Cal.App.5th 859, 865, fn. 18; *People v. Vizcarra* (2022) 84 Cal.App.5th 377, 388.)[3]

---

[3] Senate Bill No. 775 also made substantive amendments to section 1172.6 that were consistent with *Lewis*, but the amendments are not relevant here. Section 1172.6, subdivision (d)(3), states the following limitations on evidence admissible at the *evidentiary hearing*: "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the

*[footnote continued on next page]*

We independently review the trial court's determination that the petitioner failed to make a prima facie showing for relief. (*People v. Harden* (2022) 81 Cal.App.5th 45, 52; *People v. Eynon* (2021) 68 Cal.App.5th 967, 975.) A denial at the prima facie stage is appropriate only if the record of conviction demonstrates that the petitioner is ineligible for relief as a matter of law. (*Lewis*, *supra*, 11 Cal.5th at p. 960.)

V.

TRIAL COURT'S MISUNDERSTANDING OF

PRELIMINARY HEARING TESTIMONY

Defendant contends that, even assuming the trial court properly relied on the preliminary hearing transcript, the record shows that the trial court materially misunderstood the facts stated in the preliminary hearing transcript. We agree.

The trial court incorrectly construed the preliminary hearing transcript testimony as stating that there was only one metal pole used in the beating of Cosby. In addition, the trial court incorrectly concluded that the testimony stated that defendant was the only one who was in possession of the pole and the only one who beat Cosby with a pole. Preliminary hearing testimony states, to the contrary, that there were two separate poles used in the beating of Cosby, one which was used by defendant and the other by Hernandez. The preliminary hearing testimony also states that (1) the cause of death was massive head trauma, (2) defendant hit Cosby multiple times with a pole on his back, not

procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of [s]ection 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule."

13

his head, and (3) Hernandez simultaneously hit Cosby multiple times on the head with a second pole. The preliminary hearing transcript indicated that defendant was not the actual killer, Hernandez was, and defendant joined in beating Cosby by repeatedly hitting him on the back with a pole.

The trial court's remarks made during the resentencing petition hearing thus reveal that the court misunderstood the preliminary hearing facts when denying defendant's petition. Nevertheless, we conclude this alone does not require reversal of the order denying the petition. The key issue is whether the record of conviction established defendant was ineligible for resentencing as a matter of law. We conclude it does not.

VI.

RESENTENCING ELIGIBILITY

Citing *Lewis*, *supra*, 11 Cal.5th at page 971, defendant argues the order denying his resentencing petition must be reversed because the trial court improperly engaged in fact finding by relying on the preliminary hearing transcript at the prima facie stage. Defendant argues that *Lewis* abrogated *Nguyen*, *supra*, 53 Cal.App.5th 1154, to the extent that *Nguyen* holds the trial court can consider preliminary hearing testimony when making a prima facie determination. (*Lewis*, *supra*, at p. 971.) Defendant therefore concludes that the trial court erred by failing to find defendant made a prima facie showing of eligibility for resentencing.

The People, through representation by the Attorney General, agree with defendant on appeal that the record of conviction does not conclusively establish defendant's

14

ineligibility for sentencing relief as a matter of law, and therefore defendant is entitled to remand for an evidentiary hearing. The People reason that the record of conviction fails to demonstrate ineligibility for resentencing as a matter of law because of the generic manner in which murder was charged. Also, defendant pleaded no contest to a generic charge of second degree murder that did not foreclose prosecution for murder theories invalidated by Senate Bill No. 1437, such as felony murder, murder under the natural and probable consequences doctrine, or another theory of imputed malice.

This court granted the San Bernardino County District Attorney's Office's (SBCDA) application for permission to file an amicus curiae brief in support of neither party. SBCDA objects to the Attorney General's concession that this court should reverse the order denying defendant's resentencing petition, and remand the matter to the trial court. The SBCDA argues in its amicus curiae brief that *Nguyen*, *supra*, 53 Cal.App.5th 1154, permits a preliminary hearing transcript to serve as the factual basis within the record of the case, and that the transcript established that defendant is ineligible for resentencing. SBCDA further argues that *Nguyen* remains viable authority consistent with *Lewis*. SBCDA therefore maintains that the preliminary hearing transcript establishes that the theory of aiding and abetting implied malice murder remains a valid theory of liability against defendant, and therefore he is ineligible for resentencing.

15

Defendant filed opposition to SBCDA's amicus brief, arguing that this court must reverse the order denying his resentencing petition because the trial court erroneously concluded defendant failed to establish a prima facie case of resentencing eligibility. Defendant asserts that the trial court erred in considering the preliminary hearing transcript when determining that defendant failed to establish a prima facie case for relief, and even if the trial court properly considered the transcript, defendant nevertheless established a prima facie case for relief.

We agree that the preliminary hearing transcript includes testimony supporting a murder conviction permissible under current law, based on the theory of aiding and abetting implied malice murder. However, triable issues of fact exist, which prevent this court from making such a finding of guilt as a matter of law at the prima facie stage.

Defendant's petition for resentencing, filed in propria persona, satisfies the three qualifying conditions specified in subdivision (a)(1) through (3) of section 1172.6, required to establish a prima facie case of eligibility for resentencing. Defendant's resentencing petition alleges that the charging document filed against him allowed the prosecution to proceed under the felony-murder rule or natural and probable consequences doctrine or other theory under which malice is imputed to defendant based solely on his participation in a crime; that he pled no contest to second degree murder and admitted the personal use of a deadly weapon enhancement; and that he could not presently be convicted of murder because of changes to section 188 or 189 made effective January 1, 2019, and amended in 2021.

16

The People filed opposition to the petition and requested judicial notice of (1) the information, (2) the transcript of defendant's plea of no contest to second degree murder and admission to personally using a deadly weapon, (3) the plea form, and (4) the preliminary hearing transcript.

The trial court stated that when it decided defendant's resentencing petition, it reviewed the parties' briefs, the entire court file, and the People's request for judicial notice and judicially noticed documents, which included the information, the transcript of defendant's plea, the plea form wherein defendant pled guilty to second degree murder and the personal use of a deadly weapon enhancement, and the entire preliminary hearing transcript.

Because defendant's resentencing petition was facially sufficient, the trial court was required to appoint counsel, invite the prosecution to file and serve a response, and allow defendant to file and serve a reply prior to assessing whether a prima facie case for relief was made under the statute. (§ 1172.6, subds. (b), (c); see *Lewis*, *supra*, 11 Cal.5th at pp. 957, 960, 962, 964.) The court was further required to accept defendant's factual allegations as true and make a preliminary assessment of entitlement to relief if the allegations were proved. Only where the record of conviction contains established facts showing that defendant is ineligible for resentencing as a matter of law may the court find no prima facie showing has been made. (See *Lewis*, *supra*, at p. 971; *People v. Duchine* (2021) 60 Cal.App.5th 798, 815.) "[A]s a matter of law" means that the record of conviction conclusively refutes the allegations of the petition without resort to

17

factfinding, weighing of evidence, or credibility determinations. (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14.) Here, the record of conviction, including the preliminary hearing transcript, contains conflicting facts requiring factfinding and weighing of the evidence. This precludes the trial court from denying defendant's resentencing petition at the prima facie stage.

The California Supreme Court in *Patton*, *supra*, 17 Cal.5th 549, recently resolved an appellate court "split on the import of the preliminary hearing transcript in determining whether a petitioner has made a prima facie case for resentencing." (*People v. Flores*, *supra*, 76 Cal.App.5th at p. 989.) The *Patton* Court held that "a petitioner who offers only conclusory allegations of entitlement to relief under section 1172.6, in response to a record of conviction that demonstrates the petitioner's conviction was under a still-valid theory, has not, thereby, made a prima facie showing." (*Patton*, *supra*, 17 Cal.5th at p. 557.)

The *Patton* court explained that "[t]he ultimate question at the prima facie stage is whether to proceed to an evidentiary hearing. As noted, the prima facie inquiry is more demanding than the inquiry into facial validity. But petitioners need not, at the prima facie stage, meet an evidentiary burden of proof to establish entitlement to relief . . . . Rather, petitioners confronting a record of conviction that demonstrates relief is unavailable have the burden of coming forward with nonconclusory allegations to alert the prosecution and the court to what issues an evidentiary hearing would entail. It follows from what we have said already that should a trial court encounter a material fact

18

dispute, the court may not resolve that dispute at the prima facie stage and should instead grant petitioner an evidentiary hearing, assuming relief is not otherwise foreclosed." (*Patton*, *supra*, 17 Cal.5th at pp. 566-567.)

In reaching its holding, the *Patton* court addressed the issue of whether "a court, in determining at the prima facie stage whether a petitioner was convicted under a now-invalid theory, [may] rely on unchallenged, relief-foreclosing facts within a preliminary hearing transcript to refute conclusory, checkbox allegations, or would that constitute impermissible judicial factfinding[.]  As we explain, a court may do so." (*Patton*, *supra*, 17 Cal.5th at p. 564.)  The *Patton* court noted that "there is no dispute that the record of conviction the parties may consult at the prima facie stage includes a preliminary hearing transcript preceding a guilty plea." (*Id*. at p. 568.)

The *Patton* court also clarified that use of the preliminary hearing transcript at the prima facie stage did not require that the defendant, when pleading guilty, stipulate to the transcript or its contents as a basis for the plea. (*Patton*, *supra*, 17 Cal.5th at p. 569.)

In *Patton*, the court concluded there was no resolution of a factual dispute. "Rather than resolving a contested factual dispute, statements within Patton's preliminary hearing transcript contributed specific factual assertions about his conviction — namely, that it was premised on him being the sole shooter.  Patton's conclusory checkbox allegations alone could not create a factual dispute about whether he played a meaningfully different role in the attempted murder." (*Ibid*.)  The *Patton* court added that "Patton offered only conclusory allegations of entitlement to resentencing relief

19

under section 1172.6 in response to a record of conviction that the lower courts viewed as foreclosing it because that record foreclosed the conclusion that Patton's conviction was under a now-invalid homicide theory.  Patton's petition contains only a checkbox declaration with legal conclusions, he submitted no reply, and he made no argument when invited to do so at the prima facie hearing."  (*Ibid.*)

The *Patton* court therefore concluded that there was no improper factfinding because the facts in the preliminary hearing transcript were undisputed and the defendant did not file a reply or argue at the hearing.  (*Patton*, *supra*, 17 Cal.5th at p. 569.)  The *Patton* court therefore held that Patton had failed to make a prima facie showing that he was entitled to resentencing under section 1172.6.  (*Patton*, *supra*, at p. 569.)

This case is distinguishable from *Patton* in that, here, the preliminary hearing transcript included conflicting facts and there was evidence that more than a single individual was involved in the homicide.  In addition, the defendant filed a reply to the People's opposition to the resentencing petition, and defendant argued during the hearing on the resentencing petition that the preliminary hearing transcript raised triable factual issues which precluded summary denial of the resentencing petition at the prima facie stage.

The trial court concluded:  "I think that it's clear to the Court based on that preliminary hearing transcript that the defendant is not eligible and that he has not made a prima facie showing in this case. The Court is going to deny it at this stage."  The court further stated:  "The bottom line of this case is that we have a preliminary hearing

20

transcript that he stipulated to as a factual basis that shows that, in my view, he was the actual killer. If not the actual killer, there is no question in this Court's mind as to his active participation in this. He has the weapon. The cause of death is massive head trauma. The weapon has the blood and hair on it. I have no question in this case." The trial court therefore denied the resentencing petition at the prima facie stage based on factual findings, some of which were not supported by the facts in the preliminary hearing transcript.

The fact that the trial court made incorrect factual determinations based on the preliminary hearing transcript demonstrates that the trial court made improper factual findings as to defendant's involvement in the homicide. Contrary to the trial court's findings, the preliminary hearing transcript supports a finding that Hernandez, not defendant, was the actual killer. The preliminary hearing transcript also does not conclusively establish that defendant was guilty as a matter of law of implied malice murder as an aider and abettor.

"'In the context of implied malice, the actus reus required of the perpetrator is the commission of a life-endangering act. For the direct aider and abettor, the actus reus includes whatever acts constitute aiding the commission of the life-endangering act. Thus, to be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering *act*, not the result of that act. The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit *the act*, intent to aid the perpetrator in

21

the commission of *the act*, knowledge that *the act* is dangerous to human life, and acting in conscious disregard for human life.'" (*People v. Reyes* (2023) 14 Cal.5th 981, 991.) "The aider and abettor must know the direct perpetrator intends to commit the murder or life-endangering act and intend to aid the direct perpetrator in its commission. It is this mental relationship to the perpetrator's acts that confers liability on the aider and abettor." (*People v. Curiel* (2023) 15 Cal.5th 433, 468.) "The requisite intent is a subjective one—the defendant must have '"*actually appreciated* the risk involved."'" (*People v. Superior Court (Valenzuela)* (2021) 73 Cal.App.5th 485, 501.)

The preliminary hearing testimony does not conclusively establish these elements of implied malice murder as an aider and abettor, and neither the information nor the plea precludes defendant from resentencing eligibility as a matter of law. In addition the preliminary hearing transcript contains conflicting facts. The preliminary hearing testimony, which consisted primarily of hearsay testimony by Deputy Rodriguez, Detective Cornell, and Detective Palomino, does not conclusively establish defendant was guilty of a murder theory that precludes him from resentencing eligibility under section 1172.6. Palomino testified that defendant made inconsistent statements when interviewed. And during defendant's interview, he said that Cosby was a "rat," and rats get killed or beat up. Initially, defendant told Palomino that Hernandez and Keith beat Cosby with bats. Later, defendant changed his story and admitted he hit Cosby with a metal pole five times across the back, while Hernandez hit Cosby in the head five or 10 times with another pole.

In addition, Palomino testified he interviewed Keeth, who also made inconsistent statements. Keeth initially denied involvement in Cosby's homicide. Keeth told Palomino that when Keeth arrived, everything had already occurred and, after Cosby was dead, Keeth threw a knife at Cosby's buttocks. Palomino testified that as he interviewed Keeth, his story changed. Later Keeth admitted being in the room and observing the beating and that he entered Cosby's apartment with defendant and Hernandez. Keeth said he saw Hernandez and defendant beat Cosby with metal poles, which they used to hit Cosby in the head and back. Keeth said Hernandez hit Cosby with the pole in the head only once, contrary to other testimony Hernandez struck Cosby multiple times in the head. Keeth further stated defendant struck Cosby in the back several times with another metal pole, and Keeth threw a knife at Cosby's buttocks.

The preliminary hearing transcript does not conclusively establish as a matter of law that defendant is ineligible for resentencing based on conclusive evidence he committed implied malice murder as an aider and abettor, or any other murder theory precluding resentencing. To find defendant ineligible for resentencing on this record would require judicial factfinding and credibility determinations, which are impermissible at the prima facie stage. (*Lewis*, *supra*, 11 Cal.5th at p. 971.)

We, therefore, conclude the trial court improperly made factual findings at the prima facie stage when it found that defendant's petition failed to state a prima facie case for resentencing. The record does not establish as a matter of law that defendant is ineligible for such relief. The trial court's finding that defendant was either the actual

23

killer or a direct aider and abettor rests on the type of factfinding in which the trial court may not engage at the prima facie stage. As stated in *Patton*, "should a trial court encounter a material fact dispute, the court may not resolve that dispute at the prima facie stage and should instead grant petitioner an evidentiary hearing, assuming relief is not otherwise foreclosed." (*Patton*, *supra*, 17 Cal.5th p. 567.)

## VII.

## DISPOSITION

The trial court's order denying defendant's section 1172.6 petition for resentencing is reversed and the matter is remanded with directions. On remand, the trial court shall issue an order to show cause and hold an evidentiary hearing pursuant to section 1172.6, subdivision (d)(3).

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

MILLER
Acting P. J.

MENETREZ
J.

24